Peter M.K. Frost (OSB #911843)
Western Environmental Law Center
1216 Lincoln Street
Eugene, Oregon 97401
Tel: 541-359-3238
Email: frost@westernlaw.org

Andrew M. Hawley (OSB #091138)
Western Environmental Law Center
1402 3rd Ave, Suite 1022
Seattle, Washington 98101
Tel: 206-487-7250
Email: hawley@westernlaw.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| WILLAMETTE RIVERKEEPER et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>U.S. ARMY CORPS OF ENGINEERS, et al.,<br><br>Defendants. | Case No.: 6:17-cv-00801-MC<br><br>**PLAINTIFFS' MOTION RE: DISCOVERY** |

Pursuant to the Court's order of August 7, 2017, adopting a case management schedule, the parties have conferred related to the issue of discovery in this case. Doc. 13 at #7. They continue to dispute whether discovery is allowed. Accordingly, Plaintiffs Willamette Riverkeeper et al. ("Riverkeeper") hereby respectfully file this motion asking the Court to order that discovery is allowed and to order the Corps to respond to Riverkeeper's discovery request.

Background.

This case concerns winter steelhead trout in the upper Willamette River basin in Oregon, which are listed under the Endangered Species Act ("ESA") as threatened with extinction. 64 Fed. Reg. 14,517 (March 25, 1999). The Corps owns, operates, or funds dams, fish hatcheries, and other federal facilities in the basin that affect winter steelhead trout. Amd. Cmpl. ¶ 38 (Doc. 15); Answer ¶ 38 (Doc. 16). These facilities include the Marion Forks Fish Hatchery on the North Santiam River, and the South Santiam Fish Hatchery on the South Santiam River. *Id*. ¶¶ 30-31. Historically, the Corps generally allowed or paid the Oregon Department of Fish and Wildlife ("ODFW") to use these hatcheries to produce, raise, or release hatchery "summer" steelhead trout into the North Santiam River and the South Santiam River. *Id*. ¶¶ 33 & 36. Further, historically, the Corps allowed or paid ODFW to raise and release hatchery rainbow trout into Foster Reservoir on the South Santiam River. *Id*. ¶¶ 43. (These releases may affect winter steelhead trout, because returning adults are transported above Foster Dam to spawn, to help recover the species. *Id*.) Riverkeeper generally alleges that hatchery summer steelhead trout and rainbow trout harm winter steelhead trout. Amd. Cmpl. ¶¶ 22, 25 & 43.

In 2007, the Corps and two other federal agencies consulted with the National Marine Fisheries Service ("NMFS") under Section 7(a) of the ESA to obtain its opinion as to the effects of the dams, hatcheries, and other federal facilities on winter steelhead trout and spring Chinook salmon. *Id*. ¶¶ 38.[1] In 2008, NMFS issued a Biological Opinion ("BiOp") finding that the dams, hatcheries, and facilities jeopardize the continued existence of winter steelhead trout and spring Chinook salmon, and recommending a reasonable and prudent alternative to avoid jeopardy. *Id*.

---

[1] The other agencies are the Bureau of Reclamation and the Bonneville Power Administration.

Pursuant to the citizens suit provision of the ESA, which authorizes a person to file suit against a government agency alleged to be in violation of the ESA, 16 U.S.C. § 1540(g)(1), on March 8, 2017, Riverkeeper served the Corps with notice of intent to sue the Corps related to continued releases of hatchery summer steelhead and rainbow trout.

After the sixty days required under the citizen suit provision elapsed, in May, 2017, Riverkeeper filed this lawsuit, alleging that since NMFS issued the 2008 BiOp, new information reveals effects from releases of hatchery fish that may affect winter steelhead trout in a manner or extent not previously considered. 50 C.F.R. § 402.16 (stating standard). Accordingly, Riverkeeper alleges the Corps has illegally failed to reinitiate consultation with NMFS under Section 7(a) of the ESA, 16 U.S.C. § 1536(a), to obtain its opinion as to current effects of the releases of hatchery summer steelhead and rainbow trout. Amd. Cmpl. ¶ 47. Further, Riverkeeper alleges the Corps has violated Section 7(d) of the ESA, 16 U.S.C. § 1536(d), because it has made irreversible and/or irretreivable commitments of resources by releasing hatchery fish before completing reinitiation of consultation. Amd. Cmpl. ¶ 48. Third, Riverkeeper alleges the Corps has violated Section 9 of the ESA, 16 U.S.C. § 1538(a)(1)(B), because it has caused "take" of winter steelhead trout and spring Chinook salmon by paying to produce and release hatchery rainbow trout in habitat for those species. Amd. Cmpl. ¶ 49.

From 2012 until 2017, summer steelhead trout operations at the Marion Forks Hatchery and the South Santiam Hatchery, as well as releases of hatchery rainbow trout into Foster Reservoir, were made pursuant to a five-year agreement between the Corps and ODFW. Plfs' Ex. 1 at 1-17. The project period for the agreement ended on June 30, 3017. *Id*. at 1.

In August, 2017, Riverkeeper and the Corps filed a Rule 16 conference report to assist the Court in setting a case management schedule. Doc. 13. As the parties stated in their report, at that time, the Corps was "currently negotiating contracts related to fish hatchery facilities in the upper Willamette River basin that may change the facts or claims in this case." *Id*. at 2. The parties also noted that "they disagree as to whether discovery is appropriate in this case." *Id*. at 3.

Subsequently, on August 31, 2017, the Corps executed a one-year contract with ODFW (with a one-year renewal option) to produce and release 114,000 hatchery summer steelhead

trout into the North Santiam River in April, 2018. Plfs' Ex. 2 at 9. Further, Riverkeeper has learned there are 161,500 summer steelhead smolts currently being reared at the South Santiam Hatchery scheduled for release into the South Santiam River in April, 2018.[2] For rainbow trout, on September 15, 2017, the Corps entered into a one-year contract (with a one-year renewal option) with Summer Lake Trout Farm Inc. to produce and release 15,621 hatchery rainbow trout into the Foster Reservoir, beginning in April, 2018. Plfs' Ex. 3 at 36.

Pursuant to the Court's order adopting the parties' Rule 16 report, on September 15, 2017, Riverkeeper filed an amended complaint. Doc 15. On September 29, 2017, the Corps filed an answer. Doc. 16. On November 14, 2017, the parties informed the Court that settlement is unlikely. Doc. 17 at 4. Accordingly, the Corps was required to file an administrative record within 10 days. Doc. 17 at 5. To assist it in doing so, and consistent with its position that discovery is allowed in this case, on November 15, 2017, Riverkeeper served the Corps with initial disclosures under Rule 26, including all documents in its possession, in the hope that they would be included in one record. Plfs' Ex. 4. Counsel for the Corps responded that consistent with its position in the Rule 16 report, it would not be providing initial disclosures until such time as the Court issues an order mandating discovery in this case. Plfs' Ex. 5.

To clarify prospective grounds for the parties' anticipated discovery dispute, and to serve either as a basis for a motion to compel or a motion for a protective order, on November 17, 2017, Riverkeeper served on the Corps its first set of discovery requests, including requests for admission and written interrogatories. Plfs' Ex. 6.

Standard of Review.

Generally a plaintiff has a "broad right of discovery" based on the principle that "wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth." *Shoen v. Shoen*, 5 F.2d 1289, 1292 (9th Cir. 1993).

Argument.

A.  Discovery is Allowed for Claims Brought Pursuant to the ESA Citizens Suit Provision.

---

[2]  The August, 2017 contract does not appear to address producing or releasing these fish. *Cf.* Plfs' Ex. 2 at 9.

The Ninth Circuit has held that discovery is allowed for claims brought under the citizens suit provision of the ESA. As noted, Riverkeeper's claims for declaratory relief include the failure to reinitiate consultation under Section 7(a) of the ESA, 16 U.S.C. § 1536(a), the violation of Section 7(d) of the ESA, by making irreversible and/or irretreivable commitments before completing reinitiation of consultation, 16 U.S.C. § 1536(d), and the illegal "take" of winter steelhead trout and spring Chinook salmon, in violation of Section 9 of the ESA. All of these claims are properly brought pursuant to the citizens suit provision of the ESA. 16 U.S.C. § 1540(g)(1)(A); *see, e.g., Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1229-30 (9th Cir. 2008) (Section 7 failure to reinitiate consultation claim is properly brought pursuant to ESA citizens suit provision); *Forest Conservation Council v. Rosboro Lumber Co.*, 50 F.3d 781, 783 (9th Cir. 1995) (Section 9 take claim is properly brought pursuant to ESA citizens suit provision).

The Ninth Circuit has held that claims brought under the ESA citizens suit provision are not subject to scope of review (*i.e.*, the permissible body of evidence) in the Administrative Procedure Act ("APA"), and that the district court is not confined to an agency's own "administrative record" to consider evidence to resolve those claims.[3]

In *Washington Toxics Coalition v. EPA*, 413 F.3d 1024 (9th Cir. 2005), the Ninth Circuit addressed whether a district court erred when it allowed evidence outside of a federal agency's administrative record to resolve a citizens suit claim alleging that the agency violated Section 7 of the ESA. *Id.* at 1030. The district court had ruled that the APA "only governs a plaintiff's claims when the underlying substantive statute does not independently authorize a private right-of-action." *Washington Toxics Coalition v. EPA*, C01-132C, 2002 WL 34213031, *5 (W.D. Wash. July 2, 2002). On appeal, the defendants-intervenors argued that the district court erred when it "conducted its review outside an administrative record." *Washington Toxics*, 413 F.3d at

---

[3] However, the APA standard of review (*i.e.*, whether the agency's actions were "arbitrary, capricious, or not in accordance with law," applies to the body of evidence developed pursuant to the citizens suit provision. *See infra Oregon Natural Desert Association v. Kimbell*, 593 F.Supp.2d 1217, 1220-21 (D. Or. 2009) (discussing difference).

1030. The Ninth Circuit disagreed, ruling that when the ESA citizens suit provision "creates an express, adequate remedy," then "the APA does not govern the plaintiffs' claims." *Id*. at 1034.

Similarly, in *Western Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 495-96 (9th Cir. 2011), the Ninth Circuit confirmed that when a party brings a claim under the citizens suit provision of the ESA, the scope of review is not confined to an administrative record, and the district court may consider evidence outside of any record to resolve the claim. *Id*. at 497. In contrast, as to the standard of review, the Ninth Circuit noted that because the ESA does not contain a standard of review, the Court employs the "normal 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'" standard to review the ESA claim. *Id*. at 496 (citing *Village of False Pass v. Clark*, 733 F.2d 605, 609-10 (9th Cir. 1984)).

Numerous district courts have adopted the Ninth Circuit's holdings in *Washington Toxics* and *Kraayenbrink*. For example, in *Oregon Natural Desert Association v. Kimbell*, the plaintiff challenged the Forest Service's decision to authorize livestock grazing in habitat for ESA-listed steelhead and bull trout in the John Day River in Oregon, and sought a preliminary injunction to prohibit grazing along parts of the river. *Id*., No. 2:07-cv-01871-HA, 2008 WL 4186913, at *1 (D. Or. Sept. 5, 2008), *vacated in part*, 2009 WL 1663037 (D. Or. June 15, 2009). The plaintiff alleged the Forest Service violated Section 9 of the ESA, by causing the "take" of steelhead and bull trout, and violated Section 7 of the ESA, by causing jeopardy to the two species. *Id*., 2008 WL 4186913 at *8.[4] After Judge Haggerty granted the preliminary injunction, the plaintiff then filed a motion styled as a "Motion Regarding Scope of Review," seeking a court order allowing it to "introduce evidence, including expert reports and evidence obtained through discovery, to prove its claims of violations of ESA §§ 7 and 9." *Oregon Natural Desert Association v. Kimbell*, 593 F.Supp.2d 1213, 1215 (D. Or. 2008). The motion was considered by Magistrate Judge Sullivan, who issued Findings and Recommendations that "claims arising under the ESA are not limited to the administrative record review restrictions of the APA," and allowing the plaintiff to conduct discovery and file any evidence to support its claims. *Id*. at 1216-17. Judge

---

[4] The plaintiffs also alleged that NMFS violated Section 7 of the ESA. *Kimbell*, 2008 WL 4186913 at *8.

Haggerty adopted in full the findings and recommendations. *Oregon Natural Desert Association v. Kimbell*, 593 F.Supp.2d 1217, 1220-21 (D. Or. 2009).

As another example, in *McKenzie Flyfishers v. McIntosh*, No. 6-13-cv-02125-TC (D. Or.), a recent case in which the plaintiffs challenged the Corps of Engineers' role in financing releases of hatchery fish from the McKenzie Hatchery into the McKenzie River in Oregon, and brought claims pursuant to the citizens suit provision of the ESA, the Corps of Engineers filed a motion for a protective order to "limit the scope of review to the administrative record." *Id*. Doc. 24. After the parties briefed the Corps' motion, Magistrate Judge Coffin issued a one sentence minute order: "**ORDER:** Denying Motion for a Protective Order." *Id*., Doc. 36 (bold in original).

Judge Haggerty's and Magistrate Judge Coffin's rulings are consistent with other district courts' rulings on this issue. In *Conservation Congress v. Finley*, No. C11-04752 SC (LB), 2012 WL 1564946 (N.D. Cal. May 2, 2012), the plaintiffs sued the Forest Service to challenge its decision to authorize a timber sale, alleging in part that the agency illegally failed to reinitiate consultation or enter into formal consultation under Section 7 of the ESA. *Id*. at *2. The court found that both claims were brought pursuant to the citizens suit provision of the ESA. *Id*. at *4. The plaintiffs propounded discovery related to the claims, and the Forest Service filed a motion for a protective order. *Id*. The court denied the motion, ruling that the plaintiffs were entitled to discovery to seek evidence to support those claims. *Id*. at **4-5; *accord Northwest Coalition for Alternatives to Pesticides v. U.S. Environmental Protection Agency*, 920 F.Supp.2d 1168, 1173-76 (W.D. Wash. 2013) (denying EPA's motion to limit the scope of review to its administrative record, and allowing extra-record evidence to prove violations of Sections 7 and 9 of the ESA).[5]

---

[5] *Pac. Rivers Council v. Shepard*, No. 3:11-cv-442-HU, 2012 WL 950032 (D. Or. March 20, 2012), is not inconsistent with these rulings. There, the plaintiffs alleged the Bureau of Land Management violated the ESA when it decided that its revisions of forest plans would have "no effect" on listed species and, therefore, that it had no duty to consult under Section 7 of the ESA. *Id*. at *3. In that context, Judge Brown noted that Magistrate Judge Hubel reviewed the agency's administrative record for its decision. *Id*. at *4. That scenario -- review of an affirmative agency decision -- is akin to *Bennett v. Spear*, 520 U.S. 154 (1997), where the Supreme Court held that a challenge to a decision to adopt a Biological Opinion under Section 7 is properly brought pursuant to the APA, not the ESA citizens suit provision. *Id*. at 179. As Judge Haggerty has noted, "[c]laims challenging the propriety of a consulting agency issuing a biological opinion is

B.  Riverkeeper's Discovery Request.

To resolve this motion, it is important to note what Riverkeeper currently seeks in its discovery request. Riverkeeper does not seek to supplement the Corps' compliation of documents with "extra record" documents, first, because it disagrees there is a "administrative record" as to its claims in this case, and second, because it has not yet fully compared the list of documents it provided in initial disclosures with what the Corps filed and served as its record.

Instead, Riverkeeper has served requests for admissions and written interrogatories. Plfs' Ex. 5. The purpose of the requests for admissions is in part to obtain from the Corps a clear admission, denial, or averment as to facts alleged in the amended complaint. For example, in its amended complaint, Riverkeeper alleged that residualized (meaning they do not migrate to the ocean) adult summer steelhead trout prey upon winter steelhead trout fry and juveniles in the North Santiam River and South Santiam River basins. Amd. Cmpl. ¶ 22. In Riverkeeper's view, whether they do, or do not, is a question of fact. Nonetheless, the Corps did not admit, deny or make an averment to the factual allegation; instead, it responded that a certain fisheries study is the "best evidence" of whether the allegation is true. Answer ¶ 22. As a second example, Riverkeeper alleged that "[t]here is overlap in the spawn timing of winter steelhead trout and summer steelhead trout" in the North Santiam River and South Santiam River basins. Amd. Cmpl. ¶ 24. Again, the Corps did not admit, deny, or aver; instead, it responded that NMFS's five-year review of the status of winter steelhead trout is the "best evidence" of whether either of those allegations are true, or not. Answer ¶ 24. Those responses are somewhat evasive, and should not be repeated in a response to a request for admissions.

As to the purpose of the interrogatories, as an example, in its amended complaint, Riverkeeper alleged: "The Corps paid for or otherwise controlled the production of the summer steelhead trout currently being reared at the South Santiam Hatchery." Amd. Cmpl. ¶ 33. The

---

governed by the APA. Claims arising directly under the ESA Citizen Suit Provision at § 1540(g)(1)(A), on the other hand, *based upon events occurring in the aftermath of agency decisions*, are not limited by the APA scope of review." *Kimbell,* 593 F. Supp. 2d at 1221 (emphasis added; citations omitted).

Corps' response was to aver it paid "for a portion of the production of summer steelhead currently being reared" at the South Santiam Hatchery. Answer ¶ 33. But how much it paid for, and/or how much it influences or controls the production and release of these fish, may matter as to the relief Riverkeepers seeks. Accordingly, Riverkeeper seeks at Interrogatory No. 6:

> In its answer at paragraph 33, the Corps admitted it 'paid for a portion of the production of the summer steelhead trout currently being reared at the South Santiam Hatchery.' Please specify in detail the proportion, as well as any and all of the Corps' role[s] in authorizing, funding, or facilitating the rearing of summer steelhead trout at the South Santiam Hatchery in 2017-2018, and their prospective release into the South Santiam River in 2018.

Plfs' Ex. 5 at 7. If discovery is allowed in this case, the Corps must respond in detail to this interrogatory, and others, which are essential to the Court fairly considering and resolving the parties' prospective motions for declaratory and injunctive relief in this case.

Finally, during the parties' Rule 16 conference, the Court stated it may benefit from better undertanding the issues in this case via expert testimony. Similiarly, in a case concerning the operations of a fish hatchery on the Sandy River in Oregon, Judge Haggerty considered and relied on both parties' expert testimony, sometimes to resolve issues against the plaintiffs, sometimes against the federal agency defendants. *See*, *e.g.*, *Native Fish Society v. National Marine Fisheries Service*, No. 03-12-cv-00431-HA (D. Or. May 16, 2013) (Doc. 120 at 9) (citing Declaration of Edward Bowles of related to effects from releases of hatchery fish). Here, Riverkeeper agrees that expert testimony would assist in resolving the issues in this case, and is hopeful the Court will allow discovery to enable the parties to introduce expert testimony.

C.  <u>Timing of a Corps' Response to Riverkeeper's First Set of Discovery Requests</u>.

As noted, before the Court resolved whether discovery is allowed in this case, on November 15, 2017, Riverkeeper served a first set of discovery requests, with the purpose of framing what it seeks and why. Plfs' Ex. 4. Given the time the Corps has had to consider those requests, if the Court orders that discovery is allowed, Riverkeeper respectfully requests that the Court order that the Corps respond with 14 days. Riverkeeper makes that request acknowledging that (1) by the parties' agreement, this motion will not be fully briefed until December 26, 2017,

and (2) as Riverkeeper has informed the Corps, it anticipates filing a motion for preliminary relief to prevent releases of hatchery summer steelhead trout and rainbow trout into the North Santiam River and South Santiam River basins in April, 2018.

Conclusion.

The Court should order that discovery is allowed in this case, and order the Corps to respond to Riverkeeper's first set of discovery requests within 14 days of the Court's order.

Date: December 4, 2017.	Respectfully submitted,

/s/ Peter M.K. Frost
Peter M.K. Frost (OSB #911843)
Andrew M. Hawley (OSB #091138)
Attorneys for Plaintiffs